IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHAD FRANCIS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>2U, INC., a Delaware corporation, and EDX LLC, a Delaware Limited Liability Company,<br><br>*Defendants*. | Case No. 23-12332 |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Chad Francis ("Francis") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants 2U, Inc. ("2U") and edX, LLC ("edX") (collectively "Defendants") to put an end to their unlawful practice of disclosing their users' personally identifiable video viewing information in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq*.

**NATURE OF THE ACTION**

1. edX is an educational technology company that provides university-level courses on various subject to students worldwide via its interactive online platform. edX's online classes are known as massive open online courses or MOOCs, as the courses are available to anyone who creates an edX account, and participants do not have to enroll in a traditional university program.

2. Consumers like Plaintiff and the Class enroll in edX courses or otherwise purchase access to edX's massive library of pre-recorded video lectures and other educational videos. Each edX course is made up of "modules" with pre-recorded videos of lectures that consumers can watch at their own pace.

1

3. At its inception, edX was a nonprofit organization founded by academics at the Massachusetts Institute of Technology and Harvard University, who sought to accommodate a shift in higher education to technology-enabled services. In 2021, however, 2U acquired edX for $800 million and absorbed the nonprofit organization to create a for-profit EdTech giant. Through this acquisition, 2U now delivers its online video courses to over 40 million users globally.

4. Unbeknownst to consumers, every time they view a video on the edX platform, Defendants disclose a record of their viewing history to Meta—the owner and operator of the social media and advertising giant Facebook—together with personally identifiable information concerning the user. Worst of all, consumers are never informed of, nor do they give consent to, such a disclosure of their private viewing histories to third parties. Not only do Defendants' actions demonstrate a brazen disregard for its subscribers' privacy rights but their actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").

5. The United States Congress passed the VPPA in 1988, seeking to give consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8 (1988). "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

6. The VPPA allows consumer to recover damages from "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider…" 18 U.S.C. § 2710(b)(1).

**PARTIES**

9. Plaintiff Chad Francis is a natural person and a citizen of the State of California.

10. Defendant 2U, Inc. is a corporation organized and existing under the laws of the

State of Delaware with its principal place of business located at 7900 Harkins Road, Lanham, Maryland 20706.

11.     Defendant edX, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 141 Portland Street, Cambridge, Massachusetts 02139.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*, which is a federal statute.

13.     This Court has personal jurisdiction over Defendants because they are registered to, and regularly do, conduct business in this District, including entering into transactions with consumers in this District. Further, this Court has personal jurisdiction over Defendants because the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in, was directed to, and/or emanated from this District. 28 U.S.C. § 1391(b)(2).

## COMMON FACTUAL ALLEGATIONS

*The Video Privacy Protection Act*

15.     The desire to keep video viewing history records private led Congress to enact the Video Privacy Protection Act in 1988. Frightened and concerned by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

16. When legislators introduced the VPPA, the late Senator Paul Simon noted that:

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy. The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S. Rep. No. 100-599 at 6-7 (1988) (emphasis added).

17. In another strikingly accurate forward-looking statement, Senator Patrick Leahy remarked that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 7 (1988).

18. Although in 1988 these Senators could not possibly forecast the amount of data collected from and about consumers today, both Sen. Simon's and Sen. Leahy's comments would prove prescient.

19. Many glaring and dangerous privacy issues are implicated by edX's practice of disclosing its customers' video viewing histories—the exact type of dangers that the VPPA was enacted to protect against. By using the Pixel, Defendants send one of the largest advertising companies in the world key information about, among other things, individuals' interests, education levels, and potential career paths, information that can all be tied to Plaintiff and the Class members on an individual basis and monetized as Meta sees fit.

20. Accordingly, the VPPA affords consumers significant protections with respect to the collection and disclosure of information revealing the titles of any videos they have rented or

purchased.

21. Specifically, the VPPA prohibits any video tape service provider from knowingly disclosing personally identifiable information—i.e., information which identifies consumers as having requested or obtained specific video materials from the video tape service provider—without informed consent. *See* 18 U.S.C. § 2710(a)-(b).

22. Defendants edX and 2U are "video tape service provider[s]" under the VPPA, as they are "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials…" 18 U.S.C. § 2710(a)(4).

*Defendants Intentionally Disclosed Plaintiff's and the Class's Private Viewing Information*

23. According to Defendants, "edX is the online learning platform from world-leading digital education company 2U, Inc." Consumers can enroll in various courses and can even obtain bachelor's and master's degrees by completing virtual classes on the edX platform. Consumers may enroll in courses to learn a foreign language, computer programming, business administration, software engineering, and obtain degrees in nursing, data science, and public health, among others. For example, edX offers a computer programming course called "Computer Science for Artificial Intelligence," where consumers who purchase and enroll in the course can obtain a professional certificate from Harvard University.

24. By enrolling in a course, consumers can access learning "modules" or lessons that contain, *inter alia,* lesson overviews and objectives, suggested reading material, and audio visual or video lectures. *See* Figure 1.

5



(**Figure 1,** showing a video lecture for a course called "The Science of Happiness.")

25.     Courses offered on the edX platform to obtain a certificate or degree are paid. Consumers may enroll in a course by directly paying a one-time course enrollment fee, by purchasing an edX subscription, or by enrolling in a university partnered with edX. As such, edX allows consumers to effectively either purchase or rent the course and its accompanying educational videos.

26.     Unbeknownst to consumers, however, edX surreptitiously shares consumers' viewing choices and histories with Meta. Meta is not only the owner of social media website Facebook.com but is also a behemoth digital data mining and advertising company. edX transmits the video title, lesson or "module" name, and the course name to Meta along with the consumer's Facebook ID.

27.     A Facebook ID is a string of unique numbers corresponding with a Facebook

6

profile. Most importantly, a Facebook ID personally identifies the consumer because it is the identification number of a Facebook profile that anyone can use to easily locate, access, and view the corresponding profile. For example, one can access an individual's Facebook profile simply by typing their Facebook ID after the Facebook.com URL in their browser's address bar.

28.     Facebook profiles contain a wealth of personal information about consumers, including their name, email, gender, date of birth, place of residence, educational history, and even photographs of the individual.

29.     Consequently, edX's transmission of a video title, the lesson or "module" name, and the course name alongside the consumer's Facebook ID is sufficient to identify the consumer as having watched, requested, or obtained a specific video on the edX platform.

30.     Defendants' invasive practice of sharing consumers' private video watching histories is made possible by embedding an invisible tracking tool in its website called a "Meta Pixel." A Meta Pixel (the "Pixel") is a snippet of programming code that, once installed on a webpage, sends various information to Meta about the information displayed in the browser.

31.     Meta created the Pixel primarily as an advertising tool that allows website owners to track visitor traffic and actions on their websites by collecting visitor information and transmitting it back to Meta. Website owners integrate the Metal Pixel on their websites in hopes of better targeting their products and services on Facebook.

32.     According to Meta's website, the Pixel allows it "to match . . . website visitors to their respective Facebook User accounts."[1] Meta can then "tally their actions in the Facebook Ads Manager so [a website owner] can use the data to analyze [their] website's conversion flows

---

[1] *Get Started*, FACEBOOK: META FOR DEVELOPERS, https://developers.facebook.com/docs/meta-pixel/get-started (last accessed October 6, 2023).

7

and optimize [their] ad campaigns."[2]

33. Meta's website explains that, to begin using the Pixel, a business must first "install" the Pixel "by placing the Meta Pixel base code on all pages of [their] website[.]"[3] Meta further states that "[d]evelopers and marketers can *optionally choose* to send information about" a visitor's activity (emphasis added).[4]

34. Indeed, Defendants knew that by installing the Pixel on the edX website and affirmatively choosing to send information to Meta, the Pixel would send Meta information identifying edX consumers and their viewing habits. Furthermore, Defendants configured the Pixel to specifically transmit data to Meta when a consumer requests to watch or play a video on the edX platform.

35. Meta benefits from websites like edX installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms like Instagram. In addition, even if the business does not advertise exclusively with Facebook, the Pixel assists Meta in building more comprehensive data profiles of its own users, which in turn allows Meta to profit from providing more targeted advertisements for related businesses who do advertise through Facebook. Because the Pixel is so widespread, it provides Meta with crucial information about its users' preferences through web-browsing activities outside of Meta-owned platforms—data that Meta can monetize within its platforms.

36. Defendants did not seek and obtain the appropriate consent as required under the

---

[2] *Id.*

[3] *Meta Pixel*, FACEBOOK, https://www.facebook.com/business/tools/meta-pixel/get-started#:~:text=If%20you%20have%20access%20to,all%20pages%20of%20your%20website (last accessed October 6, 2023).

[4] *Meta Pixel*, FACEBOOK: META FOR DEVELOPERS, https://developers.facebook.com/docs/meta-pixel (last accessed October 6, 2023).

8

VPPA before sharing or disclosing consumers' video viewing histories with anyone. At no point did Defendants provide consumers, like Plaintiff and the putative Class, with a standalone consent form (or any consent form whatsoever) to sign or agree to that disclosed Defendants' data sharing practices. Thus, Defendants failed to obtain the requisite consent from Plaintiff and the putative Class to share their viewing information with Meta.

## FACTS SPECIFIC TO PLAINTIFF

37. In June 2022, Plaintiff Chad Francis purchased and enrolled in a course on edX. As part of the course, Plaintiff Francis watched various videos on the edX platform.

38. While enrolled in the edX course, Plaintiff Francis held a Facebook account, which was associated with a Facebook ID unique to him and his account.

39. Unbeknownst to him, Defendants disclosed the video title, lesson or "module" name, and the course name corresponding to the videos he watched on edX together with Plaintiff Francis's Facebook ID to Meta—entirely without his knowledge or consent.

## CLASS ACTION ALLEGATIONS

40. **Class Definition:** Plaintiff brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of others similarly situated, defined as follows:

> All persons in the United States who viewed a video on edX while they had a Facebook account.

41. Excluded from the Class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiff's counsel. Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

42. **Numerosity:** The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Plaintiff reasonably

believes that tens of thousands of consumers who hold a Facebook account have watched videos on the edX platform and fall into the class definition. The number and identity of class members can be easily ascertained from Defendants' records.

43. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not necessarily limited to the following:

    a.    Whether Defendants are video tape service providers;

    b.    Whether Defendants disclosed personally identifiable information to a third-party;

    c.    Whether Defendants' disclosures of personally identifiable information were intentional; and

    d.    Whether Defendants obtained written informed consent from Plaintiff and the Class.

44. **Typicality:** Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendants' misconduct at issue.

45. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the members of the Class sustained damages as a result of Defendants' conduct. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

46. **Superiority:** Class proceedings are superior to all other available methods for the

fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

**Violation of the Video Privacy Protection Act
18 U.S.C. § 2710,** *et seq.*
**(On behalf of Plaintiff and the Class)**

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer…." 18 U.S.C. § 2710 *et seq.*

53.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials…" Defendants are "video tape service provider[s]" as defined in 18 U.S.C. § 2710(a)(4) because they engage in the business of renting, selling, and delivering audiovisual materials in the form of educational videos. Defendants' business affects interstate commerce because they sell, rent, and deliver audiovisual material to consumers throughout the United States.

54.     According to 18 U.S.C. § 2710(a)(1), a "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" Plaintiff and the putative Class are consumers as defined by the VPPA because they enrolled in courses available on the

edX platform. Plaintiff and the putative Class rented, purchased, and/or subscribed to classes on the edX platform and subsequently viewed various audiovisual materials.

55. According to 18 U.S.C. § 2710(a)(3) "personally identifiable information" is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]" As described above, Facebook IDs unequivocally correspond with a consumer's Facebook profile page and serve to personally identify them. Defendants disclosed to Meta the edX video titles, lesson or "module" names, and course names corresponding with the videos requested by Plaintiff and the putative Class together with their Facebook IDs. Taken together, this information identified Plaintiff and the putative Class members as having requested or obtained those specific video materials from edX.

56. Defendants intentionally placed a Meta Pixel on the edX platform for the sole purpose of tracking consumers' activities including collecting and sharing their video watching histories with Meta. At all relevant times, Defendants knew that the Meta Pixel disclosed to Meta Plaintiff's and the Class's Facebook IDs along with the video titles, lesson or "module" names, and the course names corresponding to their requested videos.

57. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner.

58. Defendants never provided Plaintiff or the putative Class with a consent form complying with § 2710(b)(2)(B). At no time did Plaintiff and the putative Class ever provide Defendants with any form of consent—either written or otherwise—to disclose their personally-identifying information and video viewing histories to Meta or any other party.

12

59. Additionally, the VPPA creates an opt-out right for consumers under 18 U.S.C. § 2710(b)(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election[.]" Defendants failed to provide an opportunity to opt out as required by the Act.

60. By knowingly disclosing Plaintiff and Class members' personal viewing content along with their Facebook IDs, Defendants violated Plaintiff's and Class members' statutorily protected right to privacy in their prerecorded video-watching habits. *See* 18 U.S.C. § 2710(c).

61. As such, Defendants are liable to Plaintiff and the Class for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "not less than liquidated damages in an amount of $2,500" per plaintiff. 18 U.S.C. § 2710(c)(2)(A). Under the Act, Defendants are also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Chad Francis, on behalf of himself and the Class, respectfully requests that this Court enter an order:

 A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Chad Francis as representative of the Class, and appointing his counsel as Class Counsel;

 B. Declaring that Defendants' actions, as set out above, violate the VPPA, 18 U.S.C. § 2710;

 C. Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described

13

       herein;

D.     Awarding damages, including statutory damages of $2,500 per violation, and punitive damages, where applicable, in an amount to be determined at trial pursuant to the 18 VPPA, 18 U.S.C. § 2710(c);

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.     Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury of all triable issues.

                                    Respectfully submitted,

                                    **CHAD FRANCIS**, individually and on behalf of all others similarly situated,

Dated: October 10, 2023                 /s/ Josh Gardner
                                                Josh Gardner (BBO No. 657437)
                                                Nicholas J. Rosenberg (BBO No.657887)
                                                Ashleigh Bell (BBO No.708943)
                                                GARDNER ROSENBERG P.C.
                                                One State Street, 4th Floor
                                                Boston, Massachusetts 02109
                                                Tel: 617.390.7570
                                                josh@gardnerrosenberg.com

                                                Michael Ovca*
                                                EDELSON PC
                                                350 North LaSalle Street, 14th Floor
                                                Chicago, Illinois 60654
                                                Tel: 312.589.6370
                                                movca@edelson.com

                                                *Pro Hac Vice* Admission to be sought